THOMAS v. DEMPSEY.

1. ADVERSE POSSESSION—NONSUIT.—Testimony not sufficient to show adverse possession of lot in defendant for ten years, and nonsuit improperly granted.
2. REAL PROPERTY—COMMON SOURCE—JURY.—There is sufficient testimony here tending to show that both parties claim from a common source to carry the case to the jury. Methods of showing title indicated.

Before KLUGH, J., September, 1897. Reversed.

Action for possession of lot by Margaret Thomas *v.* Paul Dempsey and Baum Bros. From judgment of nonsuit, plaintiff appeals.

*Messrs. Thos. J. Kirkland, Wm. D. Trantham,* and *B. B. Clarke,* for appellant, cite: 19 S. E. R., 1; 24 Ib., 85; 1 Ib., 711; 14 Ib., 714; 11 S. C., 330.

*Mr. J. T. Hay,* contra, cites: 20 S. C., 110; 18 S. C., 538; 15 S. C., 185.

Sept. 28, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. This was an action to recover possession of a parcel of land, being a part of lot No. 1033, in the city of Camden. The plaintiff, in her complaint, after alleging that she is seized of the land in dispute, and entitled to the possession thereof, alleges that the defendant, Paul Dempsey, is in possession, by his tenant, Thos. J. Boykin, and withholds the possession thereof from plaintiff; and she further alleges that the defendants, H. Baum and M. Baum, partners as Baum Bros., claim some interest in the land. The defendants join in a general denial, and also set up the plea of the statute of limitations, based upon ten years possession in the defendant, H. Baum, alleging that Paul Dempsey holds as tenant of H. Baum. At the close of the testimony of the plaintiff, the defendant moved for a nonsuit upon the following grounds: "That

plaintiff had failed to trace title to the State, or to show twenty years possession in those through whom she claimed; that auditor's deed had not been proved, and was null and void and could not constitute claim of title; that plaintiff's evidence showed she had surrendered possession of the premises to Baum, and recognized him as owner of the premises more than ten years before institution of the action." His Honor, Judge Klugh, who heard the case, at September term, 1897, granted the motion upon the ground "that by plaintiff's own showing, the title of Baum, one of the defendants, by possession, is apparently better than that of the plaintiff"—adding that the nonsuit was not granted upon any of the grounds submitted, "except the one that H. Baum appeared to have been in possession for ten years." The plaintiff took due exception to the order of nonsuit, upon the ground that his Honor erred in holding that H. Baum had been shown to be in possession for ten years. In accordance with the proper practice, the respondents gave notice that, if this Court should be unable to sustain the nonsuit upon the ground stated by the Circuit Judge, they would ask the Court to sustain the nonsuit upon the following grounds: "1. That the plaintiff failed to trace back a title to a grant from the State. 2. That the plaintiff failed to show a continuous possession of twenty years in herself, or those under whom she claimed, from which a grant might be presumed. 3. That the plaintiff failed to show adverse possession in herself, or under any person under whom she claimed, for ten years. 4. That the alleged deed of Donald McQueen, county auditor, to Josie L. Chaplin, was inadmissible in evidence, in the absence of legal evidence that the land had been forfeited for taxes, and being so inadmissible, the plaintiff had failed to establish a claim of written title even so far as she claimed to go."

This appeal, then, presents the question whether there was error in rendering the judgment of nonsuit. It will be necessary to set forth somewhat in detail the testimony which appears in the "Case," for the purpose of ascertain-

ing: *First*, whether the plaintiff had, by her own testimony, shown title out of herself, and in the defendant, H. Baum, as held by the Circuit Judge; and *second*, if not, whether the plaintiff has failed to introduce any testimony tending to show title in herself, in any of the modes recognized by law.

The "Case" shows that the present action was commenced on the 30th of June, 1897, and, therefore, in order to determine the first question, the inquiry is whether the testimony introduced by the plaintiff was sufficient to show title out of herself, and in the defendant, H. Baum, by adverse possession for the period of ten years prior to the commencement of this action. The rule is well settled that where the question is whether a party has acquired title to real estate by adverse possession for a period of ten years, such possession must be clearly proved and shown. *Rochell ad. Holmes*, 2 Bay, 487; *Harrington* v. *Wilkins*, 2 McC., 289; where it is said the character of the possession is a question for the jury; *Cantey* v. *Platt*, 2 McC., 260; *Porter* v. *Kenny*, 1 McC., 206; *Hill* v. *Saunders*, 6 Rich., 62; *Abel* v. *Hutto*, 8 Rich., 42. Under this rule, it is clear that there was error in holding that the plaintiff, by her own testimony, had shown that the title was in H. Baum by adverse possession. The only testimony to show that Baum ever had been in possession of the lot in question in any shape or form is to be found in the following statement made by the plaintiff: "Some time the next year, I think after Mr. R. D. Thomas' death, I learned that Baum & Co., who had the mortgage, had put up the lot for sale, and Mr. Baum sent us word we must pay rent. We did not know how it was, and to keep from being turned out, as we thought, we paid rent, $5 a month. We made it at first by sewing, then Mrs. Malone's pension money helped, and we rented a part of the lot awhile to Tom Lee. The rent was paid in at the store of Baum & Stein, to the book-keeper, generally. I think it was paid sometimes to Mr. Stein, at the desk. It was some time in

the year after Mr. R. D. Thomas died we began to pay rent, I don't remember the time of the year. We stayed on the lot between two and three years after Mr. Thomas died, I believe, and moved out as the rent was hard for us to keep up. The lot was vacant awhile after we left it, according to my recollection;" and in the following testimony of Mrs. Caroline Outlaw, who was the sister of the plaintiff, and who, with another sister, Mrs. Malone, went to live on the lot just after the death of R. D. Thomas, which occurred in 1886: "That some time in 1887, she and Miss Thomas and Mrs. Malone began to pay rent to Baum & Co.; thinks they began to pay in June or July, 1887. They heard the place had been sold, and feared they would be turned out after the rent was demanded of them. They held the lot after the death of R. D. Thomas by permission of John H. Thomas, who lived in Marlborough County, and was only heir of R. D. Thomas." It seems to us that this testimony is not only insufficient to show that either Baum or Baum & Co. had such adverse possession for a period of ten years as would give him title, but does not even tend to show that fact. Even assuming that Baum's possession commenced when the plaintiff and her sisters commenced to pay rent under the apprehension of being ejected, the testimony leaves it altogether uncertain when that occurred— one of the witnesses saying that it was *some time* in the year after the death of R. D. Thomas, which was the year of 1886, and the other witness saying that she *thought* they began to pay rent in June *or July*, 1887. If it was in July, then the ten years had not expired when this action was commenced. Besides, there was no testimony whatever even tending to show that Baum's possession (if, indeed, he can be said to have had any) was either *continuous* or adverse for the whole period of ten years, which would be necessary to give him title. On the contrary, the testimony tends not only to show that the lot was vacant for awhile after the plaintiff and her sisters left it, some two or three years after the death of R. D. Thomas, in 1886, but also

that the defendant, Boykin, was in possession of it, and had been for about eighteen months, as the tenant of the defendant, Paul Dempsey, and there is nothing in the testimony to connect Dempsey with Baum. The judgment appealed from cannot, therefore, be sustained upon the ground upon which the Circuit Judge rested his conclusion, expressly declining to rest it upon any of the other grounds.

We suppose, however, that the defendants have the right, under the case of *Tutt* v. *P. R. & A. Railway Co.*, 20 S. C., 110, to ask this Court to sustain the judgment of nonsuit upon other grounds, provided due notice has been given, as it has been here. We will, therefore, proceed to consider whether the judgment of nonsuit can be sustained upon any of the additional grounds stated in the record and set forth above. In considering these grounds it must be remembered that a plaintiff, in an action to recover possession of real estate, may establish his title and right to recover in several different ways. 1st. By producing a grant from the State for the land in dispute, and connecting himself with such grant by a regular chain of paper title. 2d. By proving such possession in himself or those under whom he claims, as will authorize the presumption of a grant. 3d. By showing that, before the commencement of his action, he had acquired title by adverse possession for the requisite period of time. 4th. By showing that both he and the defendant claim under a common source of title, in which case it is not necessary to go beyond such common source of title, and the only question is as to which party can show the superior title from the common source. So that if plaintiff succeeds in showing his title in either of these modes he has a right to recover, even though he may fail to show title in either of the other modes. The practical inquiry, therefore, in this case is whether the plaintiff has failed to make such *prima facie* showing of title as would justify the Court in granting the nonsuit. Or to put the inquiry in a more precise form, has the plaintiff introduced any competent evidence tending to

prove her title in either of the four modes above indicated? Assuming for the purposes of this inquiry, but not deciding that the plaintiff has failed to introduce any competent evidence tending to show title in her, by any one of the three modes first above stated, yet it seems to us that she did introduce competent evidence tending to show title in her by the fourth mode, and, therefore, there was error in rendering the judgment of nonsuit. The evidence offered to show that both parties claimed under a common source of title was as follows: the tax return of H. Baum & Co., made by H. Baum, 18th February, 1888, on which the following entry was made: "Lot and house east of Broad street from R. D. Thomas," which tended to show that Baum returned this property for taxes as property derived from R. D. Thomas, as there was no evidence tending to show that R. D. Thomas ever owned any other property in Camden than the lot in question, and there was direct evidence that this lot had been conveyed to R. D. Thomas. Next, there was evidence that Baum & Co. took a mortgage on the lot in question, on the 16th February, 1886, to secure the payment of $150, with power of sale, from R. D. Thomas, and that the plaintiff "offered to pay the mortgage to Mr. Baum, but he demanded $400." This in the absence of any evidence whatever tending to show that Baum claimed the title to the lot from any other source, was certainly sufficient to require the case to go to the jury, as was held in *Martin* v. *Raulett*, 5 Rich., 541, recognized and followed in *Smythe* v. *Tolbert*, 22 S. C., 133. The facts of the case of Martin *v*. Raulett, so far as they affect the question as to a common source of title, are very much like those developed by the testimony in the case now under consideration. In that case, Martin claimed under a sheriff's deed for the interest of one Marsh, and to show that the defendant also claimed under Marsh, he offered evidence tending to show that Gary, the lessor of the defendant, Raulett, had taken a mortgage from Marsh, thereby recognizing his title, and the Court held that the evidence developed

the fact that both parties traced their claim of title to a common source, sufficiently to render it improper to grant a motion for a nonsuit. There can be no doubt that plaintiff claimed title under R. D. Thomas, for she introduced a deed to him from H. C. Player, proved that he died in 1886, leaving as his only heir John H. Thomas, and introduced a deed from John H. Thomas to her, covering the lot in dispute, bearing date, 1st of June, 1897. So, therefore, if the testimony above referred to be sufficient, as we have seen it was, to carry the question to the jury, as to whether both parties claimed from a common source of title, then there was error in granting the nonsuit. Under this view of the case, the other questions presented by the additional grounds for a nonsuit do not properly arise, and have not, therefore, been considered.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the case be remanded to that Court for a new trial.